IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD ODDY II, | No. 9:18-cv-00425-JKS |
| Petitioner, | MEMORANDUM DECISION |
| vs. | |
| PAUL GONYEA, Superintendent, Mohawk Correctional Facility, | |
| Respondent. | |

Richard Oddy II, a New York state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Oddy is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Mohawk Correctional Facility. Respondent has answered the Petition, and Oddy has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On August 13, 2012, Oddy was charged with 14 sex offenses in an indictment alleging that Oddy committed various criminal sexual acts with four female children ages nine, ten, twelve, and fourteen. In satisfaction of all counts, the People offered Oddy a negotiated plea to first-degree criminal sexual act with a determinate term of 14 years' incarceration to be followed by post-release supervision of between 10 and 25 years. The plea offer also required Oddy to execute a written Waiver of Appeal.

On May 7, 2013, Oddy appeared before the court with counsel to accept the negotiated plea agreement and enter a change of plea. Prior to accepting his guilty plea, the trial court

confirmed that Oddy understood the plea agreement and had adequately discussed the agreement with his attorney.  Oddy acknowledged that he had not been threatened or pressured into pleading guilty, nor had he been made promises, other than the agreed-upon sentence, in exchange for the plea.  When asked whether he was "on any kind of drugs or medications, or . . . suffering from any kind of illness that would make it difficult for [him] to understand what [wa]s being said" during the change-of-plea proceedings, Oddy answered in the negative.

The court also explained that the plea agreement would require Oddy to waive his right to appeal and that "the right to appeal is separate and distinct from those rights that are given up when a plea of guilty is entered," and confirmed that Oddy's attorney had explained the waiver of appeal to Oddy and that Oddy understood it.  Oddy also signed a written waiver of right to appeal.

The court concluded that Oddy was "aware of his statutory and constitutional rights with regards to this proceeding; that he [wa]s cognizant of his waiver and giving up of those rights by the proposed plea . . . ."  The court then recited the facts underlying the first-degree criminal sexual act charge, and Oddy admitted that his tongue came in contact with the minor victim's vagina.  The court subsequently sentenced Oddy, consistent with the terms of the negotiated plea agreement, to a determinate term of 14 years' imprisonment and 20 years of post-release supervision.

Oddy then moved pursuant to New York Criminal Procedure Law ("CPL") § 440.10 to vacate the judgment of conviction, arguing that: 1) his plea was involuntarily and unintelligently made; 2) the trial court erroneously denied his motion to suppress statements to law enforcement; 3) plea counsel rendered ineffective assistance; and 4) the imposed sentence was

harsh and excessive.  County court denied the motion in a reasoned, unpublished opinion issued

on November 9, 2015, finding that the claims were all "record-based, or alternatively [Oddy]

failed to provide an explanation for his failure to raise the issues when they were known prior to

sentencing."

Through counsel, Oddy also appealed his conviction, arguing that: 1) he did not

knowingly, voluntarily, and intelligently waive his right to appeal; 2) his guilty plea was

involuntarily obtained; 3) his involuntary confession should have been suppressed; 4) plea

counsel rendered ineffective assistance; and 5) his sentence is harsh and excessive.  The

Appellate Division of the New York Supreme Court granted Oddy's application for leave to

appeal the denial of his § 440.10 motion and considered the combined appeals on direct review.

The appellate court unanimously affirmed Oddy's judgment of conviction and affirmed the

§ 440.10 denial in a reasoned opinion issued on November 17, 2016.  *People v. Oddy*, 41

N.Y.S.3d 316, 319 (N.Y. App. Div. 2016).  Oddy sought leave to appeal on all claims raised in

the Appellate Division.  The New York Court of Appeals summarily denied leave on August 24,

2017.  *People v. Oddy*, 86 N.E.3d 573, 573 (N.Y. 2017).  His conviction became final 90 days

later, on November 22, 2017, the conclusion of the period during which Oddy could have sought

certiorari review in the United States Supreme Court.  *See Williams v. Artuz*, 237 F.3d 147,

150-51 (2d Cir. 2001).

Again proceeding through counsel, Oddy then timely filed the instant Petition for a Writ

of Habeas Corpus to this Court on April 8, 2018.  Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).

Upon this Court's order, counsel filed an Amended Petition shortly thereafter that removed the

victims' identifying information.  Docket No. 3 ("Petition").  Briefing is now complete, and the

Petition is before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his counseled Petition before this Court, Oddy argues that: 1) his guilty plea was

involuntarily procured; 2) his confession should have been suppressed as involuntarily procured;

3) trial counsel rendered ineffective service; and 4) his sentence is harsh and excessive.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).  The term unreasonable is a

common term in the legal world.  The Supreme Court has cautioned, however, that the range of

reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly

established federal law.  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating

whether a rule application was unreasonable requires considering the rule's specificity.  The

more general the rule, the more leeway courts have in reaching outcomes in case-by-case

determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would

give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Oddy has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

Ground 1.    *Involuntary Plea*

Oddy first argues that his plea was involuntarily obtained. When a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Because a guilty plea is a waiver of certain constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

6

As an initial matter, Oddy's attack to the voluntariness of his plea is, at least in part, procedurally barred from federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). Where a state-court holding contains a plain statement that a claim is procedurally barred, the federal habeas court may not review it, even if, as here, the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision"); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). The New York procedural rule applied by the Appellate Division—that a challenge to the sufficiency or voluntariness of a guilty plea must be preserved by moving to withdraw the plea or vacate the judgment—has been recognized as an independent and adequate ground for dismissal. *See, e.g.*, *Crumpler v. Khahaifa*, No. 10-CV-0819, 2011 WL 6409221, at *7 (W.D.N.Y. Dec. 21, 2011); *Garcia v. Boucaud*, No. 09 Civ. 5758, 2011 WL 1794626, at *3 (S.D.N.Y. May 11, 2011); *Escalante v. Smith*, 9:06-cv-1506, at *6 (N.D.N.Y. May 18, 2009).

To the extent Oddy contends that he was incompetent when he entered his guilty plea, the federal habeas review of such claim is not precluded by the invocation of the state procedural bar. *See Silverstein v. Henderson*, 706 F.2d 361, 367-68 (2d Cir. 1983) (prisoner's failure to object or challenge his competency to stand trial on direct appeal did not constitute a waiver of his rights and an independent and adequate state ground immune from attack on federal habeas review). A criminal defendant may not be tried unless he is competent, and he may not waive

his right to counsel or plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 398 (1993). The standard for determining competency to stand trial and competency to plead guilty are the same. *Id*. at 399. The determination turns on whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id*. at 396 (citation omitted).

The Due Process Clause does not require a competency hearing in every case; a hearing is required only if the court has "reasonable cause" to believe that the defendant has a mental defect rendering him incompetent. *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995); *see Pate v. Robinson*, 383 U.S. 375-76 (1966) (holding that the failure of a trial court to hold a competency hearing *sue sponte* may violate due process if there is sufficient evidence to cast doubt upon a defendant's competency). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Silverstein*, 706 F.2d at 369 (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). "Reviewing courts should consider the indicia of incompetence that were before the trial judge, which may include a defendant's history of erratic or irrational behavior, bizarre courtroom conduct, defense counsel's expression of doubt about the client's competence, or medical reports. *Smith v. Rock*, 554 F. Supp. 2d 505, 519 (S.D.N.Y. 2008) (citations omitted).

The counseled Petition avers that Oddy suffers from numerous physical ailments and disabilities and that he was unable to enter a voluntary plea "[d]ue to [his] intellectual limitations and physical disabilities." Nonetheless, the record belies any contention that Oddy was not

competent to enter his plea.  There is no indication in the record that Oddy was ever determined to be incompetent.

But even accepting as true Oddy's contentions that he had diminished capacity, there is no indication that his plea was involuntarily made.  An independent review of the record reveals that Oddy gave coherent and clear responses to the court's questioning during the plea allocution.  He offers no evidence that his mental impairments prevented him from understanding the proceedings, particularly given that he answered the court's questions appropriately and without difficulty.  *See Lear v. Poole*, 711 F. Supp. 2d 288, 296 (W.D.N.Y. 2010) (petitioner's "in-court, under-oath statements . . . completely undermine his contention that he was too disoriented to [have] understood what occurred at the plea hearing").  During that allocution, he confirmed that he had discussed the plea with his attorney, that he understood he was giving up certain rights, and also that he understood that the sentence he was facing.  Oddy did not exhibit any bizarre or irrational behavior which might have alerted the court to the possibility that he could not understand the proceedings or rationally aid in his own defense, and Oddy answered in the negative when asked if he was "suffering from any kind of illness that would make it difficult for [him] to understand what [wa]s being said" at the change-of-plea hearing.  Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In sum, there are no indications, other than Oddy's own after-the-fact assertions, that he could not understand the proceedings or assist in his own defense.  This Court owes the county

court's implied determinations regarding competency deference given that court's ability to observe Oddy during the proceedings.  *See United States v. Vowteras*, 500 F.2d 1210, 1212 (2d Cir. 1974); *see also Francis S. v. Stone*, 221 F.3d 100  (2d Cir.2000).  Under the AEDPA, the Court may only grant habeas relief where the state court's determination was either "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," or "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  As the discussion above makes clear, there is no basis for this Court to conclude that the state court's decision either unreasonably applied or contravened clearly established federal law.  Oddy's attacks on the voluntariness of his plea therefore fail.

Ground 2.        *Failure to Suppress Involuntary Confession*

Oddy next contends that the trial court erred in failing to suppress as involuntarily obtained his videotaped confession to law enforcement.  According to Oddy, he was sleep-deprived at the time the videotape was made and does not recall waiving his rights to silence and an attorney.

In general, a defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  However, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding."  *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975). Pursuant to CPL § 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial

10

motion to suppress evidence, despite being convicted upon a guilty plea.  *See United States ex rel. Sanney v. Montanye*, 500 F.2d 411, 414 (2d Cir. 1974) (holding that habeas petitioner did not waive by guilty plea constitutional claims arising from "illegal interrogation," including a claim challenging admissibility of statements made without *Miranda* warnings).  The Appellate Division recognized that Oddy's challenge to the denial of his motion to suppress his incriminating statement survived his guilty plea.  *Oddy*, 41 N.Y.S.3d at 318.

The Appellate Division nonetheless concluded that appellate review of the claim was "foreclosed by the valid appeal waiver, which provided that [Oddy] waived his right to appeal the judgment of conviction on the basis of, among other things, the voluntariness of any statements made by him." *Id.*  The Appellate Division's reliance on this procedural bar likewise renders Oddy's claim procedurally barred from federal habeas review.  New York courts regularly enforce appeal waivers to bar appeals of issues encompassed by a valid waiver.  *See, e.g.*, *People v. Lopez*, 844 N.E.2d 1145, 1150 (N.Y. 2006); *People v. Marrero*, 661 N.Y.S.2d 1015 (N.Y. App. Div. 1997).

As with plea bargains generally, a waiver of appeal is constitutionally valid if it is knowingly and voluntarily made.  *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004).  Under New York law, for a waiver of appeal to be knowingly and voluntarily made the record "must establish that the defendant understood that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty . . . ."  *People v. Lopez*, 844 N.E.2d 1145, 1149 (N.Y. 2006).  To the extent that Oddy argues that the waiver of his right to appeal did not satisfy this state-law requirement, such argument does not warrant federal habeas relief.  A fundamental principle of our federal system is "that a state court's interpretation of

state law, including one announced on direct appeal of the challenged conviction, binds a federal

court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236

(1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has

spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

"Federal courts hold no supervisory authority over state judicial proceedings and may intervene

only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331,

345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks

omitted).  Federal habeas relief is therefore unavailable for alleged errors of state law.  *Estelle*,

502 U.S. at 67.

　　In any event, the record reflects that Oddy specifically acknowledged during the plea

colloquy that he understood that he was waiving his right to appeal, which was separate and

distinct from those rights given up by avoiding trial, and signed a written waiver.  The record

thus fully supports the Appellate Division's finding that Oddy's waiver of his right to appeal was

valid.  Consequently, Oddy's claim is procedurally barred from federal habeas review here.  *See*

*Krouth v. Amoia*, No. 15-cv-6616, 2018 WL 1523627, at *7 (W.D.N.Y. Mar. 28, 2018); *Alvarez*

*v. Yelich*, No. 09-CV-01343, 2012 WL 2952412, at *5 (E.D.N.Y. July 17, 2012) ("Courts in this

circuit have consistently held that a petitioner's waiver of the right to appeal is an adequate and

independent state ground for denying habeas corpus relief." (collecting cases)).  Oddy is

therefore not entitled to relief on this ground either.

Ground 3.     *Ineffective Assistance of Counsel*

Oddy next argues that trial counsel was ineffective for failing to: 1) pursue a defense of physical or mental impossibility; 2) explain Oddy's options to him at the *Huntley*[1] hearing; 3) advocate for a sentence of probation; and 4) move to dismiss the indictment based on the grand jurors' failure to understand those proceedings.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Oddy must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

---

[1]     *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).  The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id*. (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New

14

York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id*. at 125.

Oddy's ineffective assistance claims must fail, however, even under the more favorable New York standard.  As an initial matter, the *Tollett* bar also applies to "ineffective assistance claims relating to events prior to the guilty plea."  *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996); *see also People v. Thomas*, 768 N.Y.S.2d 519, 520 (N.Y. App. Div. 2003) (holding that a claim of ineffective assistance of counsel, based on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea).

By voluntarily pleading guilty (as discussed *infra*), Oddy forfeited his right to bring claims premised on actions that his counsel should have taken prior to the plea process.  The *Tollett* bar thus forecloses Oddy's ineffective assistance claims to the extent they relate to matters that arose prior to Oddy pleading guilty.

The Ninth Circuit Court of Appeals recently stated that "*Tollett*, properly understood, provides that although freestanding constitutional claims are unavailable to habeas petitioners who plead guilty, claims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead."  *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. Mar. 1, 2017).  The Ninth Circuit thus held that a petitioner's claim challenging that counsel was ineffective for failing to file a motion to suppress was not barred under *Tollett* by the petitioner's guilty plea. *Id.*  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court[]' [and] therefore cannot form the basis for habeas relief under

AEDPA."  *See Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (citation omitted).  Other courts, however, including the Supreme Court, have similarly addressed such claims on the merits because the claim, if true, affects the voluntariness of the plea such that they are not barred by *Tollett*.  *See, e.g.*, *Premo v. Moore*, 562 U.S. 115, 123-32 (2011).

But Oddy is still not entitled to relief on any ineffective assistance claims that might affect the voluntariness of his plea and thus survive the *Tollett* bar.  In rejecting Oddy's ineffective assistance claims on direct appeal, the Appellate Division concluded that his direct appeal claims (including his claim here that Oddy should have pursued other defenses) were "precluded by the valid waiver of appeal in which he expressly waived his right to seek appellate review of . . . the effectiveness of counsel."  *Oddy*, 41 N.Y.S.3d at 318.  As discussed *infra*, the Appellate Division's invocation of a state procedural bar likewise precludes federal habeas review of that claim here.

Moreover, the Appellate Division rejected the rest of Oddy's contentions (involving counsel's alleged failure to discuss Oddy's options at the *Huntley* hearing, advocate for a sentence of probation, and move to dismiss the indictment) on review of the county court's denial of his CPL § 440.10 motion.  The Appellate Division affirmed the denial, concluding that "as the record reflects that [Oddy's] counsel made appropriate pretrial challenges to the grand jury proceedings, to the indictment and to [Oddy's] incriminating statements that he made to a police investigator, in addition to securing a favorable plea deal, there is nothing in the record that calls into question counsel's effectiveness."  *Oddy*, 41 N.Y.S.3d at 319.  That determination is both reasonable and fully supported by the record.  Oddy therefore fails to show that counsel rendered ineffective assistance, and he is not entitled to relief on this claim.

Ground 4.     *Harsh and Excessive Sentence*

Finally, Oddy challenges his 14-year sentence as harsh and excessive.  Federal review of his excessive sentence claim is barred, however, because the Appellate Division also relied on an independent and adequate state procedural bar when it rejected this claim on direct appeal.  Here, the Appellate Division again relied on Oddy's waiver of his right to appeal when it rejected Oddy's excessive sentence claim.  As thoroughly discussed *supra*, the Appellate Division's reliance on the state procedural bar precludes federal habeas relief here.

Moreover, Oddy cannot prevail on the merits of his challenge either.  It is well-settled that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law).  Oddy has never disputed, and does not dispute here, that he was sentenced within the applicable range.

And to the extent that Oddy's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either.  While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle.  *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and

concurring in judgment)); 28 U.S.C. § 2254(d)(1).  "'[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate' because 'the decision of a sentencing [court] is entitled to substantial deference.'"  *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (quoting *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988)).  Here, the sentence imposed by the trial court and subsequently affirmed by the Appellate Division "does not remotely approach the realm of grossly disproportionate punishments." *Edwards*, 589 F. Supp. 2d at 291 n.11; *see Lockyer*, 538 U.S. at 67-68, 77 (finding that, under California's Three Strikes law, a sentence of two consecutive terms of 25 years to life imprisonment for two counts of petty theft did not warrant relief under the AEDPA); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (mandatory life sentence imposed under Texas statute upon defendant's third felony conviction, which was for obtaining $120.75 by false pretenses, did not constitute cruel and unusual punishment).  Oddy is therefore not entitled to relief on his sentencing claim in any event.

## V. CONCLUSION

Oddy is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

18

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 1, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge